*1277 OPINION.
Matthews:
The year before us is 1918. The petitioner alleges in the petition that the respondent erred in determining depreciation on assets acquired by it from the Fall River Company on the basis of cost to Fall River Company instead of fair market value at the time the assets were acquired from Fall River Company; that he erred in determining the opening inventory of raw cotton and cotton in process acquired by petitioner from Fall River Company on the basis of cost to Fall River Company in determining net income for excess profits tax purposes; and that he erred in ascertaining and determining the net income of the petitioner for excess and war profits tax purposes upon a different basis from that was used for income tax purposes.
The respondent, by amended answer, alleged that from January 1, 1918, to November 7,1918, the petitioner and Fall River Company were affiliated; averred that he erred in determining the 1918 income for excess and war profits tax purposes and income tax purposes upon different bases; that as a result of such error the income as computed in the deficiency notice for income tax purposes should be increased by the amount of $369,387.03, being the difference between the cost of the raw cotton and cotton in process to Fall River Company and its fair market value at the time acquired, asserting a claim for an increased deficiency, if any should result from such increase in income.
The petitioner in reply to this amended answer denied that it and Fall River Company were affiliated in 1918 and denied that the respondent .erred in the amount used as an opening inventory in determining the tax for income tax purposes.
A third issue, involving the correct closing inventory for the year 1918, has been settled by stipulation as set forth in our findings of fact and effect will be given thereto in the recomputation under Rule 50.
The parties are now agreed that under the 1918 Act net income for income tax and excess and war profits tax purposes should be com *1278 puted on the same basis. This is in accordance with section 320 (a) (3) of the 1918 Act, which provides that for excess and war profits tax purposes the net income shall be ascertained and returned for the taxable year upon the same basis and in the same manner as is provided for income tax purposes in Title II of the act.
Eespondent’s brief is largely devoted to arguments in support of his contention that the petitioner and Fall River Company were affiliated not only during all of 1917 but also from January 1, 1918, to November 7, 1918, the date of the formal dissolution of the Fall River Company. Being affiliated, he argues that the two companies should have filed a consolidated return for 1918, and, therefore, that the basis for depreciation and determination of the inventory is the cost to the subsidiary, inasmuch as cost to the subsidiary was the basis used in the consolidated return for 1917, in determining depreciation allowable to the subsidiary, and for the further reason that the acquisition of the assets of its subsidiary by petitioner was an intercompany transaction occurring during affiliation, and gave petitioner no new basis.
The petitioner contends that the liquidation of the Fall River Company in 1917 terminated the affiliation; that the petitioner at that time acquired the assets in exchange for stock in the subsidiary, and therefore that the fair market value of such assets at that date, which is cost to petitioner of such assets, should be used as a basis for inventory and depreciation purposes in 1918.
Under the Revenue Act of 1918, the basis for determining depreciation is the same as the basis for determining gain or loss, namely, cost or March 1, 1913, value, and the basis for valuing the inventory is (1) cost, or (2) cost or market, whichever is lower.
The real question to be decided is, What was the cost of the assets to petitioner ? In determining this question, we must first determine .whether the fact that petitioner acquired the assets in liquidation of a wholly owned subsidiary affects the general rule applicable under the statutes in force in 1917 governing the sale or other disposition of property and the basis for computing gain or loss thereon.
Under the Revenue Act of 1916, as amended by the Revenue Act of 1917, which was in force in the year 1917, gross income included the gain derived from the sale or other disposition of property, and in the case of property acquired before March 1, 1913, the fair market value of such property as of that date was the basis to be used in determining the amount of gain derived. Section 2 (a) and (c) of the Revenue Act of 1916, as amended. Section 206 of the Revenue Act of 1917 provides that for the purpose of Title II, War Excess Profits Tax, the net income of a corporation shall be ascertained and returned for the taxable year upon the same basis and in the same manner as is provided in Title I of the Revenue Act of *1279 1916, as amended, except that amounts received by it as dividends from other corporations subject to the tax imposed by the Eevenue Act of 1916 shall be deducted.
The profit realized in 1917 by a corporation upon the sale or other disposition of property was, therefore, subject to both income and profits taxes. And where property was disposed of in exchange for other property, the fair market value of the property received represented the selling price of the property disposed of and in turn was the cost of the property acquired in exchange.
Under the transactions described in our findings of fact, the American Printing Company acquired all the assets of its subsidiary the Fall Eiver Company, on December 31, 1917, in liquidation and thereby realized a profit on the disposition of its stock. There is no dispute as to the amount of profit realized. Eespondent determined it to be the amount by which the fair market value of such assets exceeded the March 1, 1913, value of the stock surrendered. The cost to the American Printing Company of the assets thus acquired from the Fall Eiver Company, therefore, was their fair market value as of December 31, 1917. This cost, then, became the basis for determining gain or loss on the sale of such assets, and the basis for computing depreciation and valuing the opening inventory for 1918.
No question is here raised as to the right of the respondent to have included the profit realized by petitioner in net income of 1917 for income tax purposes. However, in the consolidated return for 1917 which the Commissioner required petitioner and the Fall Eiver Company to file for excess profits tax purposes, the profit was not included for the reason that respondent considered the transaction to be an “ intercompany ” transaction, occurring during affiliation, the results of which should not be reflected in the consolidated return. And it is because of this fact and the further fact that from January 1 to November 7, 1918, petitioner owned all of the stock of Fall Eiver Company, that respondent now claims that the cost to petitioner of the assets can not be used in determining the depreciation allowance and the opening inventory for 1918.
Under the principles enunciated in Burnet v. Aluminum Goods Mfg. Co., 287 U. S. 544, affiliation was not necessarily terminated by liquidation of the subsidiary in 1917, and in any event, the liquidation of the subsidiary in 1917 was' not such an “ intercompany ” transaction under either the regulations or statutes then in force, or under section 1331 of the Eevenue Act of 1921, as was required to be eliminated from the consolidated return required to be filed for excess profits tax purposes. As the liquidation of a subsidiary is a taxable transaction to the parent corporation, the assets acquired *1280 in liquidation take a new basis in the hands oí such parent corporation.
We are not called on to decide whether respondent should have included the profit in the consolidated return for 1917 for excess profits tax purposes, but the fact that it was not included can not be availed of by respondent as authority for using cost to the Fall River Company instead of cost to petitioner as the basis for determining the depreciation allowance and opening inventory of petitioner for the year 1918. The assets were acquired by petitioner in 1917 at a cost equal to their fair market value. There is no provision in the 1918 Act authorizing or requiring any other basis than cost to the taxpayer of property acquired after March 1, 1913, to be used in computing gain or loss or depreciation. Section 331 of the act relates only to the value at which assets acquired upon reorganization, consolidation or change of ownership can be included in invested capital.
The District Court of Massachusetts in the case of this petitioner, American Printing Co. v. United States, 53 Fed. (2d) 98, had before it the same question for 1919 as is involved in this case, that is, the correct basis for depreciation of the assets acquired from Fall River Company. The respondent found an overassessment for 1919, although he determined depreciation on these assets on the basis of cost to Fall River Company, and the petitioner brought a suit for recovery of the taxes paid resulting from the use of the lower basis. The District Court held that the basis for depreciation was the fair market value of the assets at the time of the transfer to the petitioner. See also Wilmington Steamboat Co. v. Sturgess, 52 Fed. (2d) 510. Both Wilmington Steamboat Go. v. Sturgess and American Printing Co. v. United States, supra, were cited with approval by the Circuit Court of Appeals in Aluminum Goods Mfg. Co. v. Commissioner, 56 Fed. (2d) 568, which decision was affirmed by the Supreme Court in Burnet v. Aluminum Goods Mfg. Co., supra.
The basis for determining the depreciation allowance for 1918 of the assets acquired by the petitioner from the Fall River Company is the cost of such assets to petitioner, which cost is their fair market value at the date acquired by petitioner, and the correct basis for valuing the opening inventories of raw cotton and cotton in process is also cost to petitioner, which was the fair market value of the raw cotton and cotton in process at the date acquired. The parties have stipulated the amount of the depreciation deduction on such basis and also the amount of the inventories. These figures, as set forth in our findings of fact, will be used in the recomputation under Rule 50.
Reviewed by the Board.

Judgment will be entered under Rule SO.